## EARLY–FOSTER CO. v. TOM B. BURNETT & CO. (No. 1642.)

(Court of Civil Appeals of Texas. Amarillo. June 30, 1920.)

1. **Sales ⬅418(2)—Where price not paid, buyer's damage is difference between contract price and market price.**

The measure of damages, where seller refused to deliver goods purchased and price has not been paid, is the difference between the contract price and the market value at time and place of delivery.

2. **Trial ⬅356(1)—Court cannot substitute its finding, where jury failed to answer requested issue.**

Where appellant had requested a special issue, which the jury had failed to answer, the court could not substitute his finding, but should have declared a mistrial instead of rendering judgment.

3. **Sales ⬅418(4)—Measure of damages for nondelivery stated.**

In a buyer's action for damages for seller's refusal to deliver goods purchased, the court should have submitted by instructions both the measure of the difference between the contract price and the market price, and, in the event of no market price, the difference between the contract price and the reasonable value at place of delivery, or in some neighboring market, if the jury should find no market at such place, at the time between final refusal to deliver and the buyer's completion of purchase of substitute goods.

4. **Evidence ⬅18—No judicial notice as to weight of cotton bale.**

In action against seller for damages for refusal to deliver under a sale price per pound certain bales' of linters cotton, where plaintiff alleged that defendant was bound to ship 200 bales, "to be of 500 pounds weight each," proof of usage and custom or general understanding as to weight was necessary, as the court cannot judicially know the weight of cotton bales.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by Tom B. Burnett & Co. against the Early-Foster Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

J. Hart Willis and Thompson, Knight, Baker & Harris, all of Dallas, for appellant.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellees.

HALL, J. Appellees, a firm, sued the appellant company, a corporation, to recover damages for breach of a contract of sale of 200 bales of linters, which appellees allege appellant refused to deliver, claiming damages in the sum of $3,505.70. Appellees alleged in substance that on or about the 24th day of August, 1916, the defendant offered, through its broker, P. G. Claiborne, at Dallas, Tex., 200 bales of linters, upon terms to be thereafter set out in a written contract, which offer was accepted, and that said broker, for said defendant as seller, wrote the contract as follows:

"Confirming telegraphic messages exchanged between us to-day, I have sold for your account to the Tom B. Burnett Company, Dallas, Texas, 200 bales of linters, equal sample submitted No. 10, at 6⅞ cents per pound, delivered Dallas, Texas, weights and quality guaranteed at destination, and subject to inspection. Terms: Sight draft, full amount of invoice (free of exchange). Bill of lading attached, sellers paying commission 25 cents per bale. Shipment: Beginning second Monday in September, 1916, in 50-bale lots; buyer furnishing directions. This memorandum of sale is made in triplicate; one copy, with documentary stamp attached, is sent to seller, one copy sent the buyer, and one copy retained as record in this office. Confirmed and submitted."

It is alleged that by the terms of the contract the defendant agreed and became liable and bound to ship and deliver to plaintiffs 200 bales of linters equal in quality to said sample, said 200 bales to be of 500 pounds weight each, as is the customary weight thereof, a total sum of 100,000 pounds of linter cotton. It is further alleged that defendant, though repeatedly requested thereafter so to do, failed and refused to make shipment in accordance with the contract; that linters of the quality specified had advanced in price to 10 cents per pound, and that at all times since the date of delivery had been worth on the market at Dallas and in Texas, 10 cents per pound; that said price and market value of said linter cotton specified in the contract is at destination 10 cents per pound; that the freight thereon from places of shipment to Dallas would be 38 cents per 100 pounds; that by reason of defendant's breach plaintiffs went into the open market and undertook to purchase linter cotton of the grade specified, but was unable to do so, and that they thereupon purchased linters of different grade and quality at the best obtainable price on the market and purchased cotton on the market which, together with the linters, was of the general average grade bought of defendant, and which cost plaintiffs 10 cents per pound. The case was submitted to a jury upon special issues, and resulted in a judgment for appellees in the sum of $1,650.70. The effect of the jury's answers to the issues is that Claiborne was authorized to make the sale and execute the contract; that it was ratified by appellant; that sample No. 10 was the same sample received by the broker from defendant; that defendant never shipped or tendered to plaintiffs linters of that grade or quality. Issue No. 5 and the answer is here set out, in full:

"What was the difference, if any, in the fair and reasonable cash market value at Dallas, Texas, between the 7th day of November, 1916, and the 20th day of November, 1916, of linters of the quality and grade of sample No. 10, introduced in evidence by the plaintiffs, and the same linters on August 24, 1916?"

Answer: "3⅛ cents per pound."

Several special issues requested by appellant were submitted, No. 2 being as follows:

"Do you, or not, find that Early-Foster Company tendered the plaintiffs, Tom B. Burnett & Co., linters of equal grade, quality, and value of the sample No. 10, sent by Early-Foster Company to Perry G. Claiborne, and by him delivered to Burnett & Co.?"

Answer: "No."

Special Issue No. 3, requested by defendant:

"If you answer the above interrogatory 'Yes,' you will not answer this question. If you answer 'No,' you will answer this interrogatory: What was the reasonable cash market value of linters of grade, quality, and value of that which Early-Foster Company contracted to sell to Tom B. Burnett & Co. at the time and place contracted for delivery?"

This issue was not answered by the jury. Under a number of assignments and propositions, appellant insists that there is no evidence authorizing or justifying a judgment in plaintiff's behalf in the sum of $1,650.70, or in fact in any sum; that the court could not base a judgment upon the answer of the jury to special issue No. 15; that special issue No. 3, requested by the appellant submitted an appropriate measure of damages, and, the jury having failed to answer it, the court was without authority to make a finding upon such issue, and render a judgment for the above sum.

[1-3] As contended by appellant, the measure of damages in a contract of sale, where the seller refused to deliver the goods purchased and the price has not been paid, is the difference between the contract price and the market price at the time and place of delivery. Simpkins, Contracts & Sales (3d Ed.) pp. 961-964. Issue No. 5, submitted by the court, clearly did not present this measure. We are further of the opinion that, if the jury had answered the special issue requested by defendant and given by the court, a judgment could have been based upon it. The appellant having requested this issue, and the jury having failed to answer, the court could not substitute his findings, and should have declared a mistrial, instead of rendering judgment for any amount. Issue No. 3, as requested, presented only one of the issues made by the pleadings. While the allegations of the petition are not as full as they possibly should have been, we think they state both the market value and the reasonable value, and will entitle plaintiffs to recover the difference between the contract price and the reasonable value, in the event the evidence should show there was no market value for linters in Dallas or in any neighboring market. Tom B. Burnett, for the plaintiffs, testified that linter cotton, unlike cotton of the usual kind, had no fixed market value, while one of the appellant's witnesses, Young, testified as to the market value of linter cotton of the grade and quality specified in the contract. There is some evidence tending to show that, while there was no fixed market value for linters in Dallas, there was a market value for them in other towns along the Missouri, Kansas & Texas Railroad, from which it was contemplated the 200 bales should be shipped.

Under the pleadings and evidence, we think a correct charge should have submitted both the measure of the difference between the contract price and the market price and in the event there was no market price, the difference between the contract price and the reasonable value at Dallas, or in some neighboring market, if the jury should find there was no market at Dallas. It will be observed that the contract stipulates that delivery shall begin the first week in September, but fixes no limit in which final delivery shall be made. The evidence of both parties discloses that appellant did not finally refuse to make delivery until about the 7th of November, and that immediately appellees commenced to purchase linters and cotton, and continued to do so until they obtained the requisite amount which they had a right to purchase under the contract later in November, completing their purchases probably about the 25th day of that month. In view of another trial we suggest appellees are entitled to recover under either measure of damages warranted by the evidence, based upon the reasonable value, or the market value, between November 7th and November 25th. We will not discuss the law relating to these phases of the case shown by the pleadings and evidence, but suggest that the rules which should govern upon another trial are clearly expressed in 24 R. C. L. pp. 69-74, §§ 335-338.

[4] Appellant's sixth proposition under the first and second assignments is that, the evidence having failed to establish the number of pounds in a bale of linters, there was nothing in the record or the verdict of the jury upon which the court could determine the amount of plaintiffs' recovery. We think this proposition is also sound. Plaintiffs alleged that defendant was bound to ship 200 bales, "to be of 500 pounds weight each, as is the customary weight thereof"; but there is no proof whatever of this fact. The Oklahoma Supreme Court, in Chicago, R. I. & P. Ry. Co. v. Cleveland, 61 Okl. 64, 160 Pac. 328, held:

"A 'bale of cotton,' as the term is used commercially, means a package of merchantable lint cotton, separated from the seed by and the first produce of a cotton gin, weighing approximately 500 pounds and classable under one of the recognized grades of cotton. Cotton might be baled before being ginned, and in such state might, in a popular sense, be called a bale of cotton; but it could not be so classified in a commercial sense. The same is true of linters," etc.

If this language can be construed as holding that the court judicially knows that a bale of cotton or a bale of linters is 500 pounds, we think the weight of authority is against the holding. In Elmore, Quillian & Co. v. Parish Bros., 170 Ala. 499, 54 South. 203, the Alabama Supreme Court held that courts would not take judicial knowledge of the fact that an average bale of cotton was 500 pounds. In the following cases it is indicated that the courts were of the same opinion, and that proof of usage and custom, or the general understanding in the commercial world, was required: Wichita Falls Compress Company v. Moody, 154 S. W. 1032; Watson v. Hazlehurst & McAllister, 127 Ga. 298, 56 S. E. 459; Brass v. Texarkana & Ft. S. Ry. Co. (Com. App.) 218 S. W. 1040. As this question will probably not arise upon another trial, we will not announce a definite rule with reference to it.

For the errors indicated, the judgment is reversed, and the cause remanded.